UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

---

MICHAEL SEARLES,

                                                1:18-cv-15804-NLH

        Plaintiff,

                                                **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

**APPEARANCES:**

FAITH SNYDER
LEGAL SERVICES OF NEW JERSEY
100 METROPLEX DRIVE, SUITE 402
PO BOX 1357
EDISON, NJ 08818

    *On behalf of Plaintiff*

ERICA MARIE ADAMS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3] 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of January 1, 2012. For the reasons stated below, this Court will reverse that decision and remand the matter for further consideration consistent with this Opinion.

I. BACKGROUND AND PROCEDURAL HISTORY

On February 20, 2014, Plaintiff, Michael Searles,

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI. See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945). The Court will provide citations only to the DIB regulations. See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

2

protectively filed[4] an application for DIB and SSI alleging that he became disabled as of January 1, 2012.[5] Plaintiff claims that he can no longer work at his previous jobs as a housekeeper and janitor because of his impairments of schizophrenia and alcohol abuse, among other impairments.

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on July 20, 2017. On September 20, 2017, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on September 10, 2018, making the ALJ's September 20, 2017 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

---

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that his onset date of disability is January 1, 2012, the relevant period for Plaintiff's SSI claim begins with his February 20, 2014 application date, through the date of the ALJ's decision on September 20, 2017. See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed). This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

3

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience,

engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[6] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not

---

[6] Various provisions of the regulations were amended effective March 27, 2017. See 82 F.R. 5844. The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of schizophrenia and alcohol abuse were severe. At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the

listed impairments. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at all skill and exertional levels,[7] and he was able to perform his past relevant work as a housekeeper and janitor.[8]

Plaintiff argues that the ALJ erred in three ways: (1) the ALJ's finding at step three that Plaintiff's schizophrenia did not meet or equal the requirements of the Listings of Impairments is not supported by substantial evidence; (2) the ALJ's finding as to Plaintiff's RFC was not supported by substantial evidence because she failed to account for Plaintiff's three- to four-days-a-week treatment at Crossroads Partial Care; and (3) the ALJ erred by not properly considering the opinions of the treating and consultative physicians.

The Court agrees with Plaintiff that the ALJ's failure to properly consider Plaintiff's treatment at Crossroads Partial

---

[7] 20 C.F.R. § 404.1568 ("In order to evaluate your skills and to help determine the existence in the national economy of work you are able to do, occupations are classified as unskilled, semi-skilled, and skilled."); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[8] Because the ALJ concluded that Plaintiff was capable of performing his past relevant work, the ALJ did not need to continue to step five of the sequential step analysis. Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

9

Care renders her decision unsupported by substantial evidence. Because that failure affects steps three through five of the sequential step analysis, the Court cannot determine - independent of the Crossroads Partial Care issue - whether the ALJ erred on the other two bases argued by Plaintiff.

Since January 2, 2014 and continuing through the date of the ALJ's decision on September 20, 2017, Plaintiff regularly attended a mental treatment program six hours a day, three to four days a week, at Crossroads Partial Care. His diagnoses were schizoaffective disorder, alcohol abuse, post-traumatic stress disorder, and learning disorder. (R. at 585.) Plaintiff received group therapy and individual treatment sessions at Crossroads. He also received his medications at Crossroads, which included olanzapine, mirtazapine, and gabapentin. (R. at 587.)

In her decision, the ALJ repeatedly acknowledged that Plaintiff attended Crossroads three or four days a week, for six hours each day. (R. at 16, 18, 19, 21.) The ALJ appears, however, to mischaracterize Plaintiff's attendance at Crossroads. Instead of viewing it as at least eighteen hours weekly of intensive mental health treatment, it appears that the ALJ considered it as an indicator of Plaintiff's level of functioning higher than what he claims.

For example, at step three while assessing Plaintiff's

ability to adapt and manage himself, the ALJ found:

> As for adapting or managing oneself, the claimant has moderate limitation. The claimant testified he has three to four bad days per month at which time he stays in his bedroom with the door shut. The claimant lives alone in an apartment, and he does dishes from time to time, takes out the trash, and prepares frozen food. A friend helps him with laundry and takes him grocery shopping. The claimant attends a partial care treatment program three days a week, for six hours a day. The claimant sometimes attends the program four days a week. The claimant attends bible study at church on Wednesdays, he helps give sandwiches to people in need, and he talks to his pastor for spiritual counseling and support. Therefore, the undersigned finds moderate limitations in this area.

(R. at 16.)

Regarding "paragraph C" criteria at step three, the ALJ found:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. As noted above, the claimant lives alone, and he attends a partial care treatment program three days a week, for six hours a day. He generally appears independent in daily living activities, but he relies on a friend to take him shopping and assist with laundry.

(Id.)

At step three, an ALJ must consider whether a claimant's severe impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404 - Listing of Impairments,

11

12.00 Mental Disorders.[9]  Part of that assessment is determining whether a claimant's mental disorder results in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.

The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15.[10]  Paragraph C criteria is to evaluate mental disorders that are "serious and persistent," and such criteria recognize that mental health interventions may control the more

---

[9] The SSA published new rules updating the evaluation of mental impairments at step three.  Those amendments were effective to pending claims as of January 17, 2017, and are therefore applicable to Plaintiff's disability claim.  See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66137 (Sept. 26, 2016).

[10] Neurocognitive disorders (12.02); schizophrenia spectrum and other psychotic disorders (12.03); depressive, bipolar and related disorders (12.04); anxiety and obsessive-compulsive disorders (12.06); trauma- and stressor-related disorders (12.15).

obvious symptoms and signs of a mental disorder. A mental disorder is "serious and persistent" when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that the disorder satisfies both C1 and C2:

The criterion in C1 is satisfied when the evidence shows that claimants "rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. . . ." Appendix 1 to Subpart P of Part 404 – Listing of Impairments, 12.00 Mental Disorders.

The criterion in C2 is satisfied when the evidence shows that, despite a claimant's "diminished symptoms and signs, you have achieved only marginal adjustment. 'Marginal adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or

increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). . . ." Id.

The passages cited above from the ALJ's paragraph B and paragraph C analysis suggest to the Court that the ALJ did not properly support her findings at step three. For paragraph B, the ALJ did not explain how Plaintiff's treatment at Crossroads demonstrated that Plaintiff had independent functioning that did not rise to the level which satisfies the paragraph B criteria. For paragraph C, the ALJ failed to explain how Plaintiff's treatment at Crossroads did not demonstrate that Plaintiff "rel[ied], on an ongoing basis, upon medical treatment, mental health therapy," or that if Plaintiff did not attend Crossroads, he would still be able "to function outside of his home or in a more restrictive setting." The ALJ must do more to explain why living alone, preparing frozen food, and going to bible study supports a finding of independence when at the same time Plaintiff receives sixteen to twenty-four hours of group and individual mental health therapy each week.[11]

---

[11] At step three, an ALJ is not permitted to make a bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119–20 (3d Cir.

14

The ALJ also failed to consider Plaintiff's treatment at Crossroads in her RFC analysis and determination that Plaintiff was capable of working full-time in his prior jobs as a housekeeper and janitor. SSR 96-8p provides that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

Completely absent from the ALJ's RFC analysis is a recognition of Plaintiff's continuous treatment at Crossroads. The ALJ found that Plaintiff was capable of performing full-time work, five days a week, eight hours a day. It is irrefutable that if Plaintiff is in therapy at least three days a week for at least sixteen hours every week he would not be able to meet the requirements of full-time employment. Thus, the ALJ's RFC determination necessarily requires that Plaintiff discontinue his three- to four-days-a-week, six-hours-a-day, mental health treatment.

Although it may be that Plaintiff does not require

---

2000). An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing. Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004).

15

continuing treatment at Crossroads, the ALJ does not cite to any record evidence that supports that conclusion. Defendant argues that the ALJ did not err on this issue because Plaintiff's attendance at Crossroads is "voluntary." This argument is specious, because all mental health treatment is "voluntary" unless a person is civilly or criminally committed.

Moreover, Plaintiff's "voluntary" attendance at Crossroads, where he follows treatment recommendations and medications prescribed by his medical providers, is a requirement of a successful disability application. Indeed, if Plaintiff failed to follow his prescribed treatment regimen, that would be a basis for the denial of his claim. See SSR-18-3p ("Under the Act, an individual who meets the requirements to receive disability or blindness benefits will not be entitled to these benefits if the individual fails, without good cause, to follow prescribed treatment that we expect would restore his or her ability to engage in substantial gainful activity (SGA).").

In making the RFC assessment an ALJ is required to consider all evidence before her. "In doing so, an ALJ may not make speculative inferences from medical reports," she is "not free to employ [her] own expertise against that of a physician who presents competent medical evidence," and "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

Additionally, the ALJ cannot substitute her own lay opinion over the record evidence. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (finding that the ALJ improperly supplanted the opinions of the plaintiff's treating and examining physicians with his personal observation and speculation, and directing that "in choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion" (citations and quotations omitted)). Significantly, the "principle that an ALJ should not substitute [her] lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Id. at 319.

In this case, the ALJ failed to properly consider the nature of Plaintiff's treatment at Crossroads Partial Care in her step three analysis. The ALJ also erred in the RFC determination by substituting her own lay opinion that Plaintiff could effectively cease his mental health treatment at Crossroads Partial Care and work full-time without citing to any record evidence to support that finding. The matter must

therefore be remanded to the ALJ so that Plaintiff's treatment at Crossroads Partial Care is properly considered in the sequential step analysis.

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed. The matter shall be remanded for further consideration consistent with this Opinion. The Court expresses no view as to whether, after a full review and explanation of the record evidence, the Plaintiff should be found disabled or not under the applicable regulations.

An accompanying Order will be issued.


Date: November 27, 2019       s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.